IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CASTLEMORTON WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-58 (RGA) |
| | ) | |
| DATTO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DATTO, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PATENT-ELIGIBLE SUBJECT MATTER AND FAILURE TO STATE A CLAIM FOR PATENT INFRINGEMENT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Clement Seth Roberts
ORRICK HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco CA  94105
(415) 773-5700

Richard Martinelli
ORRICK HERRINGTON & SUTCLIFFE LLP
51 W 52nd Street
New York, NY  10019
(213) 506-3702

March 20, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION .................................................................................................. 1

II.     NATURE AND STATE OF THE PROCEEDINGS ............................................. 2

III.    SUMMARY OF ARGUMENT .............................................................................. 2

IV.     LEGAL STANDARDS ......................................................................................... 3

        A.      Patent Eligibility Determinations ............................................................ 3

        B.      12(b)(6) Motion to Dismiss Under *Iqbal/Twombly* ................................ 4

V.      ARGUMENT ......................................................................................................... 5

        A.      The '421 Patent ........................................................................................ 5

        B.      Claim 6 of the '421 Patent is Directed to Ineligible Subject Matter ...... 7

                1.      *Alice* Step One: Claim 6 is Directed to the Abstract Idea of Manipulating
                        Signals Using Mathematical Formulas ....................................... 7

                2.      *Alice* Step Two: Claim 6 Does Not Provide an Inventive
                        Concept Beyond the Abstract Idea .............................................. 10

        C.      The Complaint Fails to State a Claim of Patent Infringement ............... 11

                1.      The Complaint Pleads WiFi Has Known Carrier Frequencies
                        Which Precludes A Plausible Infringement Claim ...................... 11

                2.      The Complaint Fails To Provide Plausible Grounds For Infringement ......... 13

                3.      The Complaint Fails To Plausibly Plead Induced Infringement ................ 18

VI.     CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)................................................................................................4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)................................................................................................ *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  309 F. Supp. 3d 218 (D. Del. 2018), *aff'd*, 939 F.3d 1355 (Fed. Cir. 2019) ......................9, 10

*Ashcroft v. Iqbal*,
  566 U.S. 662 (2009)........................................................................................................4, 14

*Atlas IP, LLC v. Exelon Corp.*,
  189 F. Supp. 3d 768 (N.D. Ill. 2016) ..................................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................4

*Bos. Sci. Corp. v. Nevro Corp.*,
  415 F. Supp. 3d 482 (D. Del. 2019)..............................................................................4, 5, 18

*CG Tech. Dev., LLC v. Fanduel, Inc.*,
  C.A. No. 1:17-cv-01041-RGA, 2020 WL 1064863 (D. Del. Mar. 5, 2020)...........................10

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)............................................................................................11

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  760 F. App'x 1013 (Fed. Cir. 2019) ....................................................................................10

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014)............................................................................................8

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018)......................................................................................4, 5, 18

*e.Digital Corp. v. iBaby Labs, Inc.*,
  C.A. No. 15-cv-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ...........................18

*Genetic Techs. Ltd. v. Merial LLC*,
  818 F.3d 1369 (Fed. Cir. 2016)........................................................................................2, 3

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ..............................................................................................................8

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
222 F.3d 951 (Fed. Cir. 2000) ..........................................................................................10

*KOM Software Inc. v. NetApp, Inc.*,
C.A. No. 1:18-cv-00160, 2018 WL 6167978 (D. Del. Nov. 26, 2018) ................................4

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017) ........................................................................................19

*M2M Sols. LLC v. Telit Commc'ns PLC*,
C.A. No. 14-1103-RGA, 2015 WL 4640400 (D. Del. Aug. 5, 2015) .................................19

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) ..............................................................................................................3

*Metricolor LLC v. L'Oreal S.A.*,
C.A. No. 18-364-R, 2018 WL 5099496 (C.D. Cal. Aug. 15, 2018), *aff'd in
relevant part*, 791 F. App'x 183 (Fed. Cir. 2019) ..............................................................5

*Modern Telecom Sys., LLC v. TCL Corp.*,
C.A. No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) ..........................14

*N. Star Innovations Inc. v. Kingston Tech. Co.*,
C.A. SA CV 17-01833-DOC, 2018 WL 3155258 (C.D. Cal. May 7, 2018) .........................4

*Network Managing Sols., LLC v. AT&T Inc.*,
C.A. No. 16-cv-295 (RGA), 2017 WL 472080 (D. Del. Feb. 3, 2017) ..............................14

*NNCrystal US Corp. v. Nanosys, Inc.*,
C.A. No. 19-1307-RGA, 2020 WL 616307 (D. Del. Feb. 10, 2020) ...................................5

*Novitaz, Inc. v. inMarket Media, LLC*,
C.A. No. 16-cv-06795-EJD, 2017 WL 2311407 (N.D. Cal. May 26, 2017) ......................18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ..........................................................................................3

*Parker v. Flook*,
437 U.S. 584 (1978) ............................................................................................................9

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*
998 F.2d 1192 (3d Cir. 1993) ............................................................................................10

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ........................................................................................10

*SIPCO, LLC v. Streetline, Inc.*,
   C.A. No. 16-830-RGA, 2018 WL 762335 (D. Del. Feb. 7, 2018) ............................................5

*SuperInterconnect Techs. LLC v. HP Inc.*,
   C.A. No. 19-0169-CFC, 2019 WL 6895877 (D. Del. Dec. 18, 2019)....................................14

*TPP Tech LLC v. Zebra Techs. Corp.*,
   403 F. Supp. 3d 382 (D. Del. 2019).........................................................................................4

**Statutes**

35 U.S.C. §101 ....................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 2, 4, 5

## I.     INTRODUCTION

Plaintiff Castlemorton Wireless LLC's ("Castlemorton") Complaint fails to state a plausible claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Castlemorton alleges infringement of a claim reciting a three-step method comprising only mathematical operations used to detect an unknown carrier frequency in a type of radio signal called a "DSSS" signal.  Castlemorton's allegations fail in two ways.

First, the claimed method is directed to the abstract idea of detecting a DSSS carrier frequency by performing three mathematical operations: subtracting, correlating and identifying. These claimed steps are divorced from any particular implementation and cover any way of performing the described mathematical process.  To this abstract idea the claims add nothing— there is no technology or implementation that might save them under the second prong of the *Alice* analysis.  The claims are therefore invalid under 35 U.S.C. §101.

Second, the Complaint does not plausibly plead infringement.  The patent claims to allow detection of an ***unknown*** carrier frequency in a DSSS signal.  The mathematical steps it claims may well have been relevant to intercepting the covert transmissions of a foreign power sent over ***unknown*** carrier frequencies, prompting the secrecy order being applied to the patent.  But detecting unknown carrier frequencies is irrelevant to the accused technology, WiFi, which operates over ***known*** carrier frequencies.

As pled in the Complaint, WiFi-enabled devices send and receive signals over ***established*** and ***defined*** channels with known carrier frequencies.  D.I. 1 ("Complaint") ¶ 57. With its use of known carrier frequencies, WiFi does not need or use the claimed carrier frequency detection method.  As a result, the Castlemorton patent claims do not cover, and are not relevant to WiFi at all.  Importantly (for the present motion), the Complaint does not resolve this incompatibility between the purpose of the patent and WiFi's operation because the

Complaint fails to allege facts plausibly showing how WiFi allegedly practices the claimed method.  While the Complaint makes statements alluding to the claim language, it fails to connect that claim language to the accused technology.  The Complaint, thus, fails to state a plausible claim of patent infringement and should be dismissed.

## II.    NATURE AND STATE OF THE PROCEEDINGS

Castlemorton is the purported assignee of the '421 patent and filed this case on January 15, 2020.  Castlemorton alleges that Defendant Datto, Inc. ("Datto") infringes claim 6 of the '421 patent.  D.I. 1 ¶ 60.[1]  Datto moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim for relief due to (i) patent ineligibility and (ii) the Complaint's failure to plausibly plead infringement.  Discovery has not yet begun, and the Court has not yet entered a schedule.

## III.    SUMMARY OF ARGUMENT

1.  Because Section 101 is an issue of law, the Court may decide the issue of eligibility on a motion to dismiss.  The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."  *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).  Dismissal for ineligibility is warranted because there are no claim construction issues or disputes about subsidiary facts that impact the eligibility analysis.  The '421 patent's only asserted claim, claim 6, is directed to nothing more than the abstract concept of manipulating signals using mathematical formulas.  Claim 6 recites ***no*** technical implementation or improvement.  The method could be performed with pen and paper.

2.  Castlemorton alleges that the accused products infringe claim 6 of the '421 patent by detecting carrier frequencies when they comply with the 802.11b/g WiFi standards.  D.I. 1 ¶ 61. The Complaint also (accurately) pleads that WiFi operates under predetermined known carrier

---

[1]    The '421 patent is presently asserted in 20 other actions in three Districts.

frequencies.  D.I. 1 ¶ 57.  WiFi's communication over **known** carrier frequencies is completely incompatible with the '421 patent's claim, which requires detecting **unknown** carrier frequencies.  Castlemorton provides no plausible infringement pleading that resolves this critical mismatch between the '421 patent and the accused WiFi technology.

3.  Castlemorton's conclusory allegations of induced infringement should be dismissed because they fail to plausibly show that Datto knew that its customers' use of the accused products constitutes alleged infringement and that Datto specifically intended for such alleged infringement to occur.

## IV.   LEGAL STANDARDS

### A.   Patent Eligibility Determinations

The Supreme Court's *Alice* and *Mayo* provide a two-part framework for determining patent eligibility under § 101.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216–18 (2014) (*citing Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).  First, the Court determines whether the claim is directed to patent-ineligible concepts, *i.e.*, a "law[] of nature, natural phenomena, and abstract ideas are not patentable."  *Id*. at 216.  Second, if the answer is yes, the Court considers the elements of the claim both individually and "as an ordered combination" to see if there is an "inventive concept" sufficient to ensure that the patent is significantly more than a patent upon the ineligible concept itself.  *Id.* at 217–18.

Because the ultimate question of whether a claim recites patent-eligible subject matter under § 101 is a question of law, a district court may resolve the issue of patent eligibility by way of a motion to dismiss.  *See, e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.").  Claim construction is not a

prerequisite to a 35 U.S.C. § 101 dismissal. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *TPP Tech LLC v. Zebra Techs. Corp.*, 403 F. Supp. 3d 382, 388 (D. Del. 2019) (granting motion to dismiss under § 101 without claim construction).

### B.      12(b)(6) Motion to Dismiss Under *Iqbal/Twombly*

This Court is very familiar with the pleading standard articulated in *Twombly* and *Iqbal*, and Datto will, therefore, not repeat that law here. It is, however, worth noting how that standard has been interpreted in connection with the requirements of pleading patent infringement.

In *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018), the Federal Circuit held that a patent complaint directed to a ***simple technology*** could be adequately pled by naming the accused products and attaching photos of it. *Disc Disease*, 888 F.3d at 160. For example, in *Disc Disease*, the four asserted claims were directed to a back brace, and the accused product was a back brace. *Id.*

Although *Disc Disease* expressly relied on the fact that the "case involve[d] simple technology," not all district courts have recognized simplicity as a limiting factor. *KOM Software Inc. v. NetApp, Inc.*, C.A. No. 1:18-cv-00160, 2018 WL 6167978, at *2 (D. Del. Nov. 26, 2018) (applying holding in *Disc Disease* and noting that "meaningful distinctions" cannot be made between complaints based on "the complexity of the technology"), *with Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 490 n.2 (D. Del. 2019) (distinguishing *Disc Disease* for a case involving complex technology), *and N. Star Innovations Inc. v. Kingston Tech. Co.*, C.A. SA CV 17-01833-DOC, 2018 WL 3155258, at *3 (C.D. Cal. May 7, 2018) (same).

Despite this disagreement, courts generally agree that, to survive a motion to dismiss, a complaint must include factual allegations sufficient to "give the defendant fair notice of infringement of the asserted patent[]" and ***the grounds upon which the claim of infringement rests***. *Disc Disease*, 888 F.3d at 1260; *see NNCrystal US Corp. v. Nanosys, Inc.*, C.A. No. 19-

1307-RGA, 2020 WL 616307, at *3 (D. Del. Feb. 10, 2020) ("'[F]air notice' to the Defendant is at the heart of the 12(b)(6) inquiry." (quoting *Disc Disease*, 888 F.3d at 1260)); *Bos. Sci.*, 415 F. Supp. 3d at 490 n.2 (reasoning that where the case involves complex technology, a *Disc Disease* type pleading "do[es] not provide fair notice of infringement").

A complaint pleading incoherent infringement theories does not provide fair notice of infringement, especially where (as here) the plaintiff's own factual allegations are *inconsistent* with the allegation of infringement. *See Metricolor LLC v. L'Oreal S.A.*, C.A. No. 18-364-R, 2018 WL 5099496, at *4 (C.D. Cal. Aug. 15, 2018) (dismissing complaint containing incomplete infringement allegations and pleading facts inconsistent with infringement), *aff'd in relevant part*, 791 F. App'x 183 (Fed. Cir. 2019); *SIPCO, LLC v. Streetline, Inc.*, C.A. No. 16-830-RGA, 2018 WL 762335, at *1 (D. Del. Feb. 7, 2018) (requiring additional factual assertions to make an allegation "plausible" where complaint contained inconsistent factual allegations).

## V.    ARGUMENT

### A.    The '421 Patent

Symmetrical direct sequence spread spectrum ("DSSS") is a technique used for transmitting signals that *admittedly* predates the patent in suit. '421 patent at 1:12–13; D.I. 1 ¶ 38. DSSS signals are created by modulating, *i.e.*, mixing, the information to be transmitted with a pseudo-random[2] binary sequence to spread the data over a frequency band that is much wider than the minimum bandwidth required for transmission. '421 patent at 1:12–18. This makes the signal difficult to distinguish from noise. *Id.*

The '421 patent purports to claim a "method for detecting" an unknown carrier signal in a

---

[2]    Although it is of no import to this motion, a "random" number is one that cannot be predicted from knowledge of the prior numbers in a sequence while a "pseudo-random" number is one that cannot be predicted from knowledge of the prior numbers **by an outside observer** but which is, in reality, calculated based on a "seed" and an algorithm (and therefore *is* predictable to someone who possesses that information).

DSSS transmission.  '421 patent, Abstract; 1:46–48.  In the field of signal espionage, detecting the carrier signal is useful because (in general) the intercepting party will not know which channel an adversary is using.  Put differently, if one wanted to listen in on the enemies' radio transmissions, it helps a lot to know which channel they are using for those transmissions.

The inventors of the '421 patent repeatedly emphasized that the patents' claimed method detected unknown carrier frequencies.  For example, the '421 patent explains that the prior art Van Etten patent does not detect a carrier frequency.  *Id.* at 1:41–44; *see also* Ying Decl. Exh. A (U.S. Patent No. 4,490,829 ("Van Etten")) at 2:28-29 (the carrier frequency is assumed, not detected).  The applicant admitted during the prosecution of the '421 patent that prior-art systems like Martin disclosed the same correlation and frequency inversion steps that the '421 patent seeks to claim.  *See* Ying Decl. Exh. B ('421 Patent File History, Applicant's Amendment in Response to July 17, 1986 Office Action, January 20, 1987) at 3 ("[T]he observation that [prior art] Martin uses spread spectrum correlators including frequency inversion is generally correct . . . .").  But the applicant distinguished Martin on the ground that it involved ***known*** carrier frequencies, and therefore did not detect unknown carrier frequencies.  *Id.*  In contrast, the applicant made clear the invention of the '421 patent "determines an ***unknown*** carrier frequency."  *Id.* at 4.

Claim 6 is the only claim asserted against Datto, *see* D.I. 1 ¶ 83, and recites:

> A method of detecting the **carrier frequency** of a **DSSS signal** including the steps of:
>
> > *subtracting* the **DSSS signal** from **a signal having a higher frequency** than a frequency in the DSSS signal spectrum to produce **DSSS signal frequency spectrum inversion**;
> >
> > *correlating* the **inverted** and **non-inverted DSSS signal**s at substantially zero relative time delay; and

*identifying* the said **carrier frequency** from the **correlation signal**.

'421 patent 4:34–43.   The claimed flow of signals between the method steps is reflected graphically below, with the colors coordinated with the claim language above.



### B.   Claim 6 of the '421 Patent is Directed to Ineligible Subject Matter

#### 1.   *Alice* Step One: Claim 6 is Directed to the Abstract Idea of Manipulating Signals Using Mathematical Formulas

Claim 6 recites a three-step mathematical algorithm for manipulating signals.   The process starts with two signals: (#1) a "DSSS signal" and (#2) a "signal [with] a higher frequency" than the DSS signal spectrum.   '421 patent 4:36–37.   The first claim step requires a simple subtraction of signal #2 minus signal #1 that produces an "inversion" of the DSSS signal spectrum.   *Id*. at 4:36–39.[3]   The second step calls for a second calculation to correlate the non-inverted and the inverted DSSS signals at zero relative time delay, which results in a "correlation signal."   *Id*. at 4:40–41.   And the third (and final) step broadly calls for identifying a carrier frequency based upon the correlation signal, without any limitation regarding ***how*** the

---

[3]   The patentee refers to this step as a "subtraction technique to produce frequency inversion of the DSSS signal spectrum."   Ying Decl. Exh. C ('421 Patent File History, Applicant's Response to Nov. 24, 1987 Office Action, May 24, 1988) at 3.

identification is accomplished.  *See id*. at 4:42–43.

In sum, claim 6 broadly requires the simple steps of *subtracting* two signals, *correlating* the result of that subtraction with one of the two original signals and then (in some unspecified way) *identifying* a carrier frequency.  '421 patent 4:35–43.  The claim is, therefore, directed to a process of pure data manipulation, which is an abstract idea.  *See Digitech Image Techs., LLC v. Elecs. for Imaging, Inc*., 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible.").

Indeed, asserted claim 6 is highly analogous to the manipulation of binary-coded decimals ("BCD") found abstract in *Gottschalk v. Benson*, 409 U.S. 63, 65 (1972).  The *Benson* Court evaluated a claim directed to a mathematical process for "converting signals from binary-coded decimal form into pure binary form."  Those claims recited the steps of *shifting*, *adding* and *masking* sequences of binary numbers.  *Id*. at 73 (Appendix to Opinion (claim 8)).  The Supreme Court found that the claims were abstract because, if allowed, "the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself."  *Id.* at 72

Claim 6 of the '421 patent is also a claim "on the algorithm itself."  Like the claims at issue in *Benson*, claim 6 of the '421 patent is directed to a mathematical algorithm for manipulating coded information.  *See id*. at 67.  In particular, the claim recites steps for subtracting, correlating and identifying data with no limitation whatsoever on how those steps are achieved.  It matters not what technique is used to do the subtraction, how the correlation is performed or *how* the carrier signal is identified—instead the claim purports to preempt both the very idea of doing the math it describes in the first two steps, and **any** way whatsoever for

accomplishing the result claimed in the third step.  The claim is, therefore, far more preemptive and abstract than the claim found ineligible in *Benson*—which at least purported to describe specific math, rather than (as here) two basic mathematical steps and an unconnected, unexplained result.

Similarly, in *Parker v. Flook*, the Supreme Court held patent-ineligible a mathematical formula for calculating an alarm limit in which the only novel feature was the mathematical formula or algorithm.   437 U.S. 584, 589–90 (1978).   The claimed method involved (1) measuring the present value of a process variable, (2) using the disclosed mathematical formula to calculate a new alarm limit in view of the present value and (3) adjusting the previous alarm limit to the updated value.  *Id.* at 585–86.  Although the claimed process in *Flook* was for "the catalytic chemical conversion of hydrocarbons," the Court invalidated and found that "[i]f a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory."  *Id.* at 595–60.  Claim 6 of the '421 patent is, in fact, broader and more abstract than the claims invalidated in *Flook*.  The claims in *Flook* required use of the result of the mathematical formula to update an alarm limit. *Id.* at 597.  In contrast, the '421 patent claim is directed to just the mathematical operations of subtracting, correlating and identifying a carrier signal—it does not call for or require any practical use for or of the identified information.

The Federal Circuit has recently reaffirmed the ineligibility of claims directed to mathematical processes even when applied to concrete applications like the construction of drive shafts for vehicles.  *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 309 F. Supp. 3d 218, 225 (D. Del. 2018), *aff'd*, 939 F.3d 1355 (Fed. Cir. 2019) (holding patent-ineligible method claims directed to applications of Hooke's law with the result of friction damping).  As a result,

the purely mathematical process of claim 6, which contains *no* practical application whatsoever, is abstract under the first step of *Alice*.

2.    ***Alice* Step Two: Claim 6 Does Not Provide an Inventive Concept Beyond the Abstract Idea**

Claim 6 contains nothing that might rescue it at *Alice* step two. To the contrary, both the '421 patent specification and file history confirm that claim 6 does not contain the kind of inventive concept that might save it under *Alice*. *See Alice*, 573 U.S. at 217.[4]

"To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326–27 (Fed. Cir. 2017). Thus, any features not recited in the claims "are irrelevant" to the "*Mayo/Alice* analysis." *Am. Axle*, 939 F.3d at 1363. Claim 6 only contains mathematical formulas for manipulating signals. There is no equipment—let alone inventive, unconventional equipment—recited in claim 6 or its supporting specification. *See* Section V.B.1. Instead, claim 6 relies upon mathematical correlation and frequency inversion to detect a purportedly previously undetected frequency.

The Supreme Court has also warned that "conventional steps, specified at a high level of generality, [are] not enough to supply an inventive concept." *Alice*, 573 U.S. at 222. Here, Castlemorton has conceded that the steps recited in the claim were well-known and generic at the time the application was filed. For example, during the prosecution of the '421 patent, the applicant explained how he "ha[d] no difficulty with [the examiner's] observation that [prior art

---

[4]    Prosecution histories constitute public records. *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000). In ruling on a motion to dismiss, the court may consider documents that are in the public record. *See CG Tech. Dev., LLC v. Fanduel, Inc.*, C.A. No. 1:17-cv-01041-RGA, 2020 WL 1064863, at *1 (D. Del. Mar. 5, 2020) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Similarly, the Federal Circuit has treated such evidence as relevant to an *Alice* analysis, even at the pleading stage. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1019 (Fed. Cir. 2019) (affirming motion to dismiss on section 101 grounds and relying on prosecution history to support its finding that process was well-known in the art); *see also* 37 C.F.R. § 1.11(a).

patent 'Martin'] discloses correlation and frequency inversion."  Ying Decl. Exh. B at 4.  Instead of arguing that the claimed operations were inventive, Applicant distinguished the '421 patent's claimed invention based on the prior art's failure to determine a DSSS carrier frequency.  *Id*.  Put differently, the applicant admitted that the first two steps of the three-step process were known and the only additional thing he purported to add was the result claimed in the third and final step.  But this result cannot save the claim under the second prong of the *Alice* analysis both (i) because the third step is claimed purely as a result (i.e., without specifying *how* the identification is accomplished) and (ii) because the step of identifying a piece of information is a purely abstract piece of data manipulation in and of itself.  *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (an abstract idea cannot "supply the inventive concept that renders the invention 'significantly more' than [the] ineligible concept").

Because the only asserted claim from the '421 patent (claim 6) is directed to an abstract idea, possesses no limitations directed to anything other than data manipulation, and lacks any inventive concept, it is ineligible for patent protection under § 101.

**C.     The Complaint Fails to State a Claim of Patent Infringement**

**1.     The Complaint Pleads WiFi Has Known Carrier Frequencies Which Precludes A Plausible Infringement Claim**

Castlemorton fails to state a plausible claim of patent infringement because the entire point of the '421 patented invention—detecting an unknown carrier frequency—is irrelevant to WiFi.  Castlemorton attempts to paper over this fundamental deficiency with technical jargon, misstatements and irrelevancies.  But none of these distractions can change the fact that WiFi uses *known* carrier frequencies and therefore does not practice the claimed method.

The Complaint explains the relevance of the '421 patent to clandestine communications (D.I. 1 ¶ 39) and the difficulty of intercepting and jamming such signals (D.I. 1 ¶ 38).  In this

context, and consistent with the secrecy order applied to the '421 patent, detecting the unknown carrier frequency of an adversary's DSSS transmissions might be useful.

But a standard WiFi receiver does not need to detect an unknown carrier frequency because both the transmitter and receiver are ***cooperatively*** communicating over a known channel. Indeed, nothing in the Complaint identifies an unknown carrier frequency within WiFi or WiFi's detection of an unknown carrier frequency.

To the contrary, the Complaint affirmatively and expressly pleads that WiFi involves communication over known carrier frequencies. For example, Paragraph 57 of the Complaint includes the figure below, which states that the accused WiFi 802.11b/g standard employs 11 channels, each with a ***known*** carrier frequency, *e.g.*, channel 1 (2.412 GHz), channel 5 (2.432 GHz).



context, and consistent with the secrecy order applied to the '421 patent, detecting the unknown

The use of known carrier frequencies in WiFi is completely incompatible with the '421 patent. As noted above, the final limitation of claim 6 expressly requires "identifying the said

carrier frequency from the correlation signal." Because you need not identify something you already know, the claim requires detection of an unknown carrier frequency—even ignoring the preamble's admonishment requiring that claim 6 is "a method of detecting the carrier frequency." And, to the extent there is any doubt, during prosecution, the patent owner specifically distinguished the '421 patent's claimed invention over the prior art because "Applicant's invention determines an unknown carrier frequency." Ying Decl. Exh. B at 4. Castlemorton further distinguished the prior art "Martin" reference because in "Martin . . . the carrier frequency is already known." *Id.* at 3. Thus, as the applicant noted, it "is not surprising at all" that Martin does not disclose "DSSS carrier frequency determination" as the '421 patent claims. *Id.* at 4.

There is no way to resolve the fact that the Complaint both asserts (i) that WiFi infringes a claim directed to detecting an unknown carrier frequency while also (ii) accurately pleading that WiFi uses known carrier frequencies. At a minimum, the latter allegation renders the former allegation implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility requires facts that allow the court to draw an inference that the defendant is liable for misconduct). The Complaint should therefore be dismissed, and—unless Castlemorton can explain in its opposition how it proposes to solve this fundamental, apparently irreconcilable problem—the Court would be justified in concluding that amendment is futile.

## 2. **The Complaint Fails To Provide Plausible Grounds For Infringement**

The mismatch between the claims and purpose of the asserted patent and the design of WiFi is further demonstrated by Castlemorton's failure to provide a coherent limitation-by-limitation pleading showing how WiFi practices asserted claim 6.[5]

---

[5] The Complaint contains no allegations reflecting infringement of claims 1–5, which are much narrower than claim 6 because they are drafted in mean-plus-function style and are

13

Courts in this district have recognized that simply naming a standard is insufficient to plausibly plead infringement. *See SuperInterconnect Techs. LLC v. HP Inc.*, C.A. No. 19-0169-CFC, 2019 WL 6895877, at *2 (D. Del. Dec. 18, 2019) (dismissing complaint failing to allege facts showing how the standard embodied in an accused product plausibly reads on the claim elements of an asserted claim); *Modern Telecom Sys., LLC v. TCL Corp.*, C.A. No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017) (same); *Network Managing Sols., LLC v. AT&T Inc.*, C.A. No. 16-cv-295 (RGA), 2017 WL 472080, at *1 (D. Del. Feb. 3, 2017) (same). Thus, Castlemorton's bald assertion that "the Datto '421 Products necessarily infringe the '421 Patent" because they "comply[] with the 802.11b and/or 802.11g standard" (D.I. 1 ¶ 61) is insufficient to plausibly plead infringement.

A plausible infringement allegation would show how Datto's product practices the three steps of claim 6, including a showing of the relationship between each of the steps. Although Castlemorton devotes 35 paragraphs of the Complaint to purportedly showing WiFi's infringement of claim 6 (D.I. 1. ¶¶ 53-88), it does not provide a claim chart or otherwise show how WiFi practices these three claimed steps. Castlemorton had the information it needed on how WiFi operates. D.I. ¶ 61. If it had a plausible allegation, it could have and should have clearly pled how WiFi meets these three steps. *See Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016) ("[G]iven the investigation that Rule 11(b) requires before filing a complaint, it is difficult to imagine how an action for infringement could be brought without a tentative but nonetheless coherent theory of…how the accused products practice…each of [the infringing claims'] elements."). Instead, Castlemorton's Complaint is an incoherent mishmash

---

therefore limited to the particular structural embodiments disclosed in the patent. Nevertheless, the Complaint fails to adequately plead infringement of claim 6, therefore, it also fails to plead infringement of these narrower claims.

of technical jargon that appears intended to obfuscate the fact that it lacks a plausible infringement allegation.

When you cut through the noise and focus on the few specific statements in the Complaint that purport to connect claim 6 to WiFi, Castlemorton's allegations are revealed to be incompatible with WiFi, incomprehensible and implausible. Again, Claim 6 requires the method reflected below.



In contrast, the Complaint's description of how WiFi purportedly "practices" claim 6 is reflected below (citations to corresponding paragraphs in the Complaint).



As explained in the list below, these pleadings fail to provide grounds for a plausible infringement claim.

- Claim 6's preamble requires detecting the carrier frequency of a DSSS signal. The Complaint (D.I. 1 ¶¶ 65 and 67) inconsistently alleges that the DSSS signal is the PLCP preamble and PSDU.

- Claim 6 requires that the DSSS signal is subtracted from a higher frequency signal.  The Complaint abandons the purported DSSS Signals identified in paragraphs 65 and 67 and does not mention them in paragraphs 74 and 75, which refer to the subtraction.  These paragraphs discussing subtraction do not identify any DSSS signal.

- Claim 6 requires the received DSSS signal to be subtracted from a higher frequency signal.  WiFi systems transmit and receive signals at around 2.4 GHz (D.I. 1 ¶ 57).  Yet paragraph 74 of the Complaint does not mention any signal with a frequency higher than 2.4 GHz.  It only mentions a lower frequency 11

16

MHz signal.

- Claim 6 requires correlating the DSSS signal with the output of the subtracting step, which must be a frequency inversion. But the Complaint describes two different and inconsistent acts as being a correlation. Paragraph 71 states correlation is "comparing," whereas paragraph 80 states that correlation is "de-spreading." These paragraphs again fail to identify the alleged DSSS signal, merely referring generically to a "spread spectrum signal." And they each describe a different signal that is "correlated" with the spread spectrum signal. Paragraph 71 refers to a chipped signal, whereas paragraph 80 refers to a local replica of the pseudo noise code. Neither of these signals is described to be (or is) a DSSS signal inversion as required by the claim.

- Claim 6 requires the output of the correlation step be used to identify the carrier signal. The Complaint inconsistently alleges in paragraph 68 that the identification is performed by de-spreading a PPDU signal, which contradicts the allegation in paragraph 80 that de-spreading is how WiFi performs the correlation step. And while the Complaint states that the PPDU signal is used during identification, it does not allege that the PPDU is the output of the correlating step.

Any one of the deficiencies identified above is sufficient to show that the Complaint does not plausibly plead a claim of infringement because they each highlight the Complaint's failure to show how WiFi practices the claimed method. *See Novitaz, Inc. v. inMarket Media, LLC*, C.A. No. 16-cv-06795-EJD, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017) (complaint is implausible if it would not permit a court to infer that a required element of the patent claim was

satisfied); *e.Digital Corp. v. iBaby Labs, Inc.*, C.A. No. 15-cv-05790-JST, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016).  This readily distinguishes the Complaint from *Disc Disease*, which was directed to a simple back brace and whose infringement allegations had no apparent inconsistencies or deficiencies.

More importantly, the failures highlighted above show that the Complaint does nothing to inform Datto how and why it is alleged to infringe the '421 patent.  The Court should not allow Castlemorton to proceed based on an elaborate game of hand waiving while steadfastly *avoiding* any coherent explanation of what is alleged to infringe.

### 3.   The Complaint Fails To Plausibly Plead Induced Infringement

Castlemorton's induced infringement allegations should be dismissed because they fail to plausibly show that Datto knew that its customers' use of the accused products constitutes infringement and that Datto specifically intended for such infringement to occur.  "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Bos. Sci.*, 415 F.3d at 491 (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)).

Castlemorton makes only conclusory allegations of Datto's knowledge of infringement and its alleged specific intent to induce its customers to infringe.  D.I. 1 ¶ 86.  Such conclusory statements "based on no factual allegations cannot pass muster under the plausibility standards." *M2M Sols. LLC v. Telit Commc'ns PLC*, C.A. No. 14-1103-RGA, 2015 WL 4640400, at *4 (D. Del. Aug. 5, 2015).  Moreover, Castlemorton cannot plead that (even post complaint) Datto had knowledge of infringement of the '421 patent because, as detailed above, Castlemorton has failed to provide any coherent theory of infringement in the Complaint.  *See Bos. Sci.*, 415 F.3d at 491 (explaining that there can be no induced infringement without direct infringement).  In

short, the Complaint provides no basis for Datto to believe there is infringement here.

## VI.   CONCLUSION

For the foregoing reasons, Datto respectfully requests that the Court dismiss the Complaint because the '421 patent is invalid under 35 U.S.C. § 101 and because the Complaint fails to state a claim for patent infringement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendant Datto, Inc.*

OF COUNSEL:

Clement Seth Roberts
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
(415) 773-5700

Richard Martinelli
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W 52nd Street
New York, NY  10019
(212) 506-3702

March 20, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 20, 2020, upon the following in the manner indicated:

Stephen B. Brauerman                                          *VIA ELECTRONIC MAIL*
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, DE 19801
  *Attorneys for Plaintiff*


*/s/ Jennifer Ying*
_____

Jennifer Ying (#5550)